# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 15, 2022

Lyle W. Cayce
Clerk

No. 22-20002

GRAND FAMOUS SHIPPING LIMITED, ET AL.

*Plaintiffs*,

*versus*

CHINA NAVIGATION COMPANY PTE., LIMITED,

*Defendant—Appellee*,

*versus*

TPC GROUP, L.L.C.; OSG 243 L.L.C.; OVERSEAS SHIP MANAGEMENT, INCORPORATED,

*Claimants—Appellants*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-4678

---

Before SMITH, CLEMENT, and HAYNES, *Circuit Judges*.*

---

* Judge Haynes concurs in the judgment only.

EDITH BROWN CLEMENT, *Circuit Judge*:

A time-chartered vessel allided with a barge and a dock in the Houston Ship Channel. The owner of the barge and the lessee of the dock sued both the vessel's owner and her then-time charterer, seeking damages for negligence.

The district court granted summary judgment in the time-charterer's favor. It held that the time charterer did not function as the vessel's de facto owner, nor did it negligently discharge its duties as her time charterer. The lessee of the dock, on behalf of itself and certain other interested parties, timely appealed. We AFFIRM.

I.

On June 13, 2018, while navigating the Houston Ship Channel, the captain of the M/V Yochow ordered a helmsman to turn the vessel hard to starboard (right). The helmsman, who allegedly was fatigued due to an inadequate work/rest schedule, instead turned the vessel hard to port (left). That mistake caused the Yochow to strike the OSG 243 barge, which was berthed at Dock A. The momentum from the allision pushed the barge into the dock, damaging both substantially.

On June 20, 2018, OSG 243 LLC—the barge's registered owner—and Overseas Shipholding Group, Inc.—the barge's manager—filed a verified complaint against the Yochow, *in rem*, and against Grand Famous Shipping Ltd. and China Navigation Co., *in personam*. *See* Complaint, *OSG 243 LLC v. M/V YOCHOW*, No. 4:18-CV-2046, (S.D. Tex. June 20, 2018), ECF No. 1. Grand Famous is the registered owner of the Yochow. China Navigation was, at the time of the allision, the long-term time charterer of the Yochow pursuant to a Time Charter Party with Grand Famous.

In the verified complaint, OSG 243 LLC and Overseas Shipholding Group, Inc. sought "money damages in excess of $3,300,000.00

representing the cost to repair the OSG 243, loss of hire, surveying costs, cargo loss, additional operating cost and interest" as a result of the alleged negligence of the "M/V YOCHOW [and] her owner and operator." Complaint at 3, 4:18-CV-2046, ECF No. 1.

In December 2018, Grand Famous and Beikun Shipping Tianjin Co.—the technical manager of the Yochow pursuant to a Ship Management Agreement with Grand Famous—brought a limitation of liability action in federal district court. TPC Group LLC—the lessee of Dock A; OSG 243 LLC; Overseas Shipholding Group, Inc.; and Port of Houston Authority filed answers and claims in limitation in response to Grand Famous and Beikun's limitation action. *See Grand Famous Shipping Ltd. v. Port of Hous. Auth.*, 574 F. Supp. 3d 438, 440 (S.D. Tex. 2021).

The district court consolidated the damages case with the limitation action. China Navigation then filed an answer and, shortly thereafter, filed a motion for summary judgment seeking dismissal of all claims against it. As relevant here, China Navigation argued that it could not be held liable in tort for the allision because, as time charterer, it lacked operational control over the Yochow and was not responsible for the Yochow's safety or the negligence of her crew. Moreover, it argued that there was no evidence that it was negligent in conducting its traditional duties as time charterer.

TPC was the only party that filed a substantive response to China Navigation's motion for summary judgment. *See id.* at 442 n.1. TPC advanced a two-part theory for China Navigation's liability. First, it argued that China Navigation was independently negligent as time charterer by failing to exercise reasonable care in selecting and employing a competent contractor (*i.e.*, Grand Famous and, by extension, Beikun). That was so, TPC argued, because China Navigation failed to ensure that (a) Grand Famous was financially stable, and (b) the Yochow had appropriate safety

management procedures in place. Had China Navigation been more careful in vetting Grand Famous, the argument goes, it would have discovered inadequacies in the Yochow's safety management procedures—in particular, her fatigue management protocols—and the allision would not have occurred.

Second, it argued that China Navigation was the de facto owner of the Yochow and therefore responsible for the Yochow's safety and the negligence of her crew. It even went as far as to argue that China Navigation used Grand Famous as a shell company to shield itself from liability.

The district court granted summary judgment in China Navigation's favor. It held first that there was no genuine issue of material fact as to whether China Navigation was the Yochow's de facto owner. It next held that China Navigation did not act as a negligent time charterer because it did not owe a duty to vet Grand Famous' finances or the Yochow's safety protocols.

TPC and "certain interested underwriters" timely appealed, as did OSG 243 LLC and Overseas Ship Management, Inc. OSG 243 LLC and Overseas Ship Management, Inc. joined TPC's appellate briefing but did not file briefs of their own.

## II.

We review a district court's order granting a motion for summary judgment de novo, applying the same standard as the district court. *Hyatt v. Thomas*, 843 F.3d 172, 176 (5th Cir. 2016). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A disputed fact is material if it "might affect the outcome of the suit under the governing law[.]" *Hyatt*, 843 F.3d at 177 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "We construe all facts and inferences in the light most

No. 22-20002

favorable to the nonmoving party[.]" *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (quoting *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005)).

## III.

There are two questions on appeal. The first is confined to the facts of this case: Did China Navigation exercise sufficient operational control over the Yochow such that it should be considered her de facto owner? No.

The second is more general and, if resolved in TPC's favor, would have potentially far-reaching consequences for the shipping industry: Does a time charterer have a duty to vet a vessel owner prior to executing a charter party? TPC acknowledges that our existing maritime jurisprudence has never explicitly recognized such a duty. Yet, it suggests that one nevertheless exists. We disagree.

## A.

A charter party is a maritime contract that describes the "arrangements and contractual engagements entered into when one person (the 'charterer') takes over the use of the whole of a ship belonging to another (the 'owner')." GRANT GILMORE & CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY 193 (2d ed. 1975) (hereinafter "GILMORE & BLACK"). There are three primary kinds of charter parties, which are highly standardized: voyage charters, time charters, and demise or bareboat charters. *Id.* at 193–94.

> In a voyage charter the ship is engaged to carry a full cargo on a single voyage. The owner retains all control over the vessel. In a time charter the ship's carrying capacity is taken by the charterer for a fixed time for the carriage of goods on as many voyages as can fit into the charter period. *Again, the owner retains all control for management and navigation.* In a demise or bareboat charter, the charterer takes over full control of the

5

No. 22-20002

ship and becomes the owner pro hac vice. The charterer thus
assumes control of management and navigation.

*Dougherty v. Navigazione San Paolo, S.P.A. Medafrica Line*, 622 F. Supp. 1, 3
(E.D. Pa. 1984) (emphasis added) (citing Gilmore & Black at 193–94);
*see also In re Dann Ocean Towing, Inc.*, No. 1:15-CV-01610-NLH-AMD, 2018
WL 901716, at *3 (D.N.J. Feb. 15, 2018). "The time charter is used where
the charterer's affairs make it desirable for him to have tonnage under his
control for a period of time, without undertaking the responsibilities of ship
navigation and management or the long-term financial commitments of
vessel ownership." Gilmore & Black at 194.

This case involves a time charter. In 2013, during the Yochow's
construction, China Navigation and Grand Famous executed a standard time
charter party,[1] pursuant to which China Navigation could engage the Yochow
to carry cargo for a specified duration.[2] Grand Famous and China Navigation
contracted at arm's length through an intermediary shipbroker called Taiwan
Wallem Transportation Co. Under this time charter, as is customary, Grand
Famous retained control over all material aspects of vessel management and
navigation:

> Nothing herein stated is to be construed as a demise of the
> vessel to the Time Charterers. The Owners shall remain
> responsible for the navigation of the vessel, acts of pilots
> and tug boats, insurance, crew, and all other similar
> matters, same as when trading for their own account.

---

[1] This agreement was based on a standard form promulgated by the New York
Produce Exchange. The parties amended it in a few places to suit their particular needs.

[2] In April 2018, China Navigation sub-chartered the Yochow to Daiichi pursuant
to a Fixture Recap. At the time of the allision giving rise to this dispute, the Yochow was
under sub-charter to Daiichi.

No. 22-20002

In addition, Grand Famous remained responsible for ensuring that the Yochow's safety management systems complied with the International Safety Management (ISM) Code. China Navigation, in exchange, was responsible for covering certain of the Yochow's expenses, including fuel and port charges. It also got to rename the Yochow, paint her in its house colors, paint its logo on her funnel, and fly its house flag.

TPC does not attempt to argue that the time charter itself transferred control over the Yochow from Grand Famous to China Navigation. Nor could it; the parties explicitly contracted for a time charter, wherein Grand Famous retained control over the vessel. If the parties had wanted to structure their agreement differently such that responsibility for the Yochow's management, navigation, and safety shifted to China Navigation, they could have done so. There's a charter party for that—a demise charter. But they didn't.

In fact, one of the very reasons why an entity would choose a time charter is precisely to avoid "undertaking the responsibilities of ship navigation and management or the long-term financial commitments of vessel ownership." GILMORE & BLACK at 194. It is therefore clear from the time charter's terms that China Navigation did not assume contractual control over the Yochow.

Even so, TPC argues that the court should treat China Navigation *as if* it were the Yochow's owner because it held itself out to the world as such. For support, TPC relies on the fact that China Navigation was listed as the Yochow's "Manager" in the Lloyd's Register of Ships until this incident; China Navigation listed the Yochow as a vessel that it "operated" in a 2016 Sustainability Report; and China Navigation renamed the vessel, painted her in its house colors, and painted its corporate logo on her funnel. In addition, TPC claims that China Navigation "'stayed involved' with the operation of

the [Yochow]." It points to the fact that China Navigation directed the Yochow's captain to download its reporting software, Swirelink, which reports data about the vessel back to China Navigation.

These arguments are unmoored from reality.

First, the time charter explicitly gave China Navigation the privilege of renaming the vessel and painting her in its house colors and with its logo. That had nothing to do with China Navigation's exercising operational control over the Yochow and everything to do with its exercising its rights under the time charter. Second, that China Navigation listed the Yochow as "operated" in its 2016 Sustainability Report should be viewed in the proper context. Its designation of the Yochow as "operated" was to distinguish her from vessels that China Navigation listed as "owned" and/or "managed."

China Navigation treated vessels that it "owned" or "managed" differently from vessels that it listed as "operated." For example, China Navigation maintained its own ISM-compliant safety management system (SMS) on vessels that it managed. But both parties agree that, pursuant to the Ship Management Agreement, Grand Famous made *Beikun* responsible for implementing and maintaining the Yochow's SMS. In fact, the Ship Management Agreement gave Beikun responsibility for nearly all management-related duties, including maintaining an SMS, providing routine maintenance and arranging for repairs, manning the vessel and training her crews, and educating her crews on the SMS. The evidence shows that it was Beikun, not China Navigation, that managed the Yochow.

Third, TPC's argument that China Navigation was the Yochow's de facto owner because it was listed as her manager in the Lloyd's Register of Ships falls flat. TPC cites no authority for the proposition that the way a time charterer *describes* a vessel to third parties is of legal import. And indeed, it is not; the terms of the charter party control, and those terms clearly describe

China Navigation as the time charterer and Grand Famous as the owner with control over the vessel. *See, e.g.*, *Gale-Ebanks v. Chesapeake Crewing, LLC*, 525 F. Supp. 3d 620, 626 (D. Md. 2021) ("Courts are reluctant to determine that a time charterer has operational control over a vessel, which would render it an owner *pro hac vice*."). Again, the touchstone of de facto ownership is *control*, and China Navigation had virtually none.

Finally, TPC's argument that China Navigation "stayed involved" in operating the Yochow because it directed the Yochow's captain to download Swirelink is unpersuasive. Pursuant to the time charter, China Navigation was responsible for certain of the Yochow's expenses, including her fuel costs and port charges. Given that Swirelink tracks "where each and every vessel is" and reports vessels' "time, location, speed, and consumption," it makes perfect sense that China Navigation would require the Yochow to download it. This does not show that China Navigation exercised operational control.

In sum, the facts do not demonstrate that China Navigation retained contractual control over the Yochow. Nor do they suggest that it exercised operational control over the Yochow to such an extent that it should be considered her de facto owner.

### B.

The only remaining avenue for relief available to TPC is to show that China Navigation acted as a negligent time charterer. Its ability to do so turns on whether China Navigation owed a duty to vet Grand Famous' finances and safety management protocols prior to executing the charter party.

TPC argues that, had China Navigation diligently investigated Grand Famous and ensured that Grand Famous diligently investigated Beikun, it would have discovered that neither had the ability to support the Yochow. According to TPC, Grand Famous owns only one vessel and has no

employees, no physical office, and only one (unpaid) director.  And Beikun, to whom Grand Famous delegated technical management responsibility of the Yochow, had only sixteen employees and around $2.8 million in registered capital.  TPC says this was woefully insufficient to support the Yochow's operations.

China Navigation's position is that, as a matter of law, it had no duty to vet the Yochow's owners or managers, nor was it obligated to vet the financial stability of Grand Famous or Beikun's safety procedures.[3]  The duties of a time charterer to third parties are well defined, it argues, and do not extend beyond certain "spheres" of activity.

We're on board with China Navigation.  The general rule under traditional principles of admiralty law is that "a time charterer who has no control over the vessel[] assumes no liability for negligence of the crew or unseaworthiness of the vessel absent a showing that the parties to the charter intended otherwise." *In re P & E Boat Rentals, Inc.*, 872 F.2d 642, 647 (5th Cir. 1989) (cleaned up).  As discussed, *supra*, there is no indication that China

---

[3] This was also the position that China Navigation took in the district court:

Q.    China Navigation, one of the reasons you do a high level check on deficiencies is because China Navigation feels like it's its obligation to make sure that the vessels it charters operate safely. True?

A.    There's no obligation to check on that.  We're looking to protect our commercial interest.

                                            …

Q.    Do you believe that, as a matter of custom in the industry or just as a matter of safety, pure general safety, that China Navigation had an obligation to make sure that the owner of the Yochow was competent and qualified to perform that mission safely?

A.    No, we have no obligation.

Navigation and Grand Famous intended to vary the terms of the time charter such that China Navigation would assume control—and the responsibilities that attend that control—over the Yochow.

Despite the general rule, however, a time charterer may still be liable for negligently "conducting its activities as time charterer." *Id.*; *Graham v. Milky Way Barge, Inc.*, 824 F.2d 376, 388 (5th Cir. 1987); *see also In re Dann Ocean Towing*, 2018 WL 901716, at \*5. This circuit recognizes "a distinction between a time charterer's potential liability under the time charter and independent tort liability which is not governed by the time charter." *Milky Way*, 824 F.2d at 388. Thus, even though China Navigation did not assume control over the Yochow by contract or otherwise, it may nevertheless be liable to third parties for negligence. *Milky Way* is instructive on this point.

In *Milky Way*, Chevron time chartered a vessel that capsized and threw four men overboard. *Id.* at 378. Three men survived and sued Chevron and the vessel's owner, claiming, *inter alia*, that Chevron negligently dispatched the vessel into unsheltered waters despite inclement weather. *Id.* at 378–79, 387–88. The district court held that Chevron was negligent, and Chevron appealed, arguing that "as a time charterer it ha[d] no liability for the unseaworthiness of the chartered vessel or the negligence of its crew." *Id.* at 387–88. We rejected Chevron's argument and affirmed the district court. *Id.* Despite recognizing that it is the "unusual" case in which a time charterer is liable "for an incident concerning the vessel under charter," we held that the district court did not clearly err in finding that Chevron was *independently negligent* in contributing to the vessel capsizing. *Id.* at 388.

Importantly, *Milky Way* teaches that "general principles of negligence govern maritime torts." *Id.* TPC relies on *Milky Way* to argue that, despite China Navigation's role as time charterer, it still owed a duty to third parties

to carefully vet its independent contractor—Grand Famous—before time chartering the Yochow.

But there is more to the story than just *Milky Way*. While time charterers may face some exposure to liability for negligence to third parties, that exposure is not unlimited.

In this circuit, time charterers owe "a hybrid duty arising from contract and tort, to persons with whom [they have] no contractual relationship, including vessel passengers, to avoid negligent actions *within the sphere of activity* over which [they] exercise[] at least partial control." *Hodgen v. Forest Oil Corp.*, 87 F.3d 1512, 1520 (5th Cir. 1996) (emphasis added).[4] "[T]he traditional spheres of activity in which a time charterer exercises control and thus owes a duty include choosing the vessel's cargo, route, and general mission, as well as the specific time in which the vessel will perform its assignment." *Id.* Most importantly for our purposes, "a time charterer owes *no duty* beyond these spheres" unless the parties "vary the traditional assignment of control by contract or custom." *Id.* (emphasis added).

In other words, time charterers *do* owe duties to third parties. Namely, to avoid negligent acts within the traditional spheres of activity over which they exercise control. But those spheres are well defined, and time charterers are not—as a matter of law—liable for acts taken outside those spheres unless the parties agree otherwise by contract or custom.

Ensuring the competence of a contractual counterparty plainly does not fall within a traditional sphere of activity over which time charterers exercise control. And there is no indication that China Navigation and Grand Famous intended to "vary the traditional assignment of control by contract

---

[4] *Hodgen* was overruled on other grounds by *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc).

or custom." *Id.* Thus, China Navigation did not owe a duty to vet Grand Famous' finances or the Yochow's safety management protocols prior to executing the time charter.

## IV.

TPC's claim is that China Navigation is responsible for the allision because it failed to diligently vet Grand Famous and the Yochow's safety management protocols. Had it done so, it would have discovered inadequacies in those protocols—primary among them were the Yochow's work/rest standards. Those standards, TPC argues, caused the Yochow's helmsman to turn to port when he should have turned to starboard. Thus, China Navigation is liable for the damages that resulted.

The Yochow crew's alleged failure to abide by Stubb's twelfth commandment does not provide a lifeboat for TPC's theory of liability.[5] The fatal flaw in TPC's argument is that China Navigation did *not*, as a matter of law, owe any duty to vet Grand Famous or the Yochow's safety procedures. Neither did it assume control over the Yochow as her de facto owner. The district court properly granted summary judgment in China Navigation's favor.

The judgment is AFFIRMED.

---

[5] HERMAN MELVILLE, MOBY DICK; OR, THE WHITE WHALE 113 (Dodd, Mead & Co. 1922) (1851) ("Think not is my eleventh commandment; and sleep when you can, is my twelfth[.]").