# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 15, 2024

Lyle W. Cayce
Clerk

No. 23-20502

Kimaletha Wynn; Jeanique McGinnis, *as next friend of* K.Y.,
R.Y., and M.Y., *minors*; Valene Hoskins, *as next friend of* M.Y.;
Christina Bluefield Pickett, *as next friend of* C.Y.,

*Plaintiffs—Appellants*,

Vincent Leday; Melanie Young, *as Representative of* the
Estate of Gwenetta Young; Sharonda Donatto, *as next
friend* P. Y.; Reshan George, *as next friend* M. Y.; Phyllis
Smith, *as next friend* C. Y.,

*Intervenor Plaintiffs—Appellants*,

*versus*

Harris County, Texas; Sheriff Ed Gonzalez; Patricio
Lau; Abraham Romero; Leesa Brown,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-4848

Before King, Stewart, and Higginson, *Circuit Judges*.
Stephen A. Higginson, *Circuit Judge*:[*]

Vincent Young died by suicide while in pretrial detention at Harris County Jail. His family members and the representative of his mother's estate sued, among other individuals and entities, the County and one of the doctors at the Jail, Dr. Patricio Lau, for violations of the Texas Constitution, other state laws, and Young's constitutional rights under 42 U.S.C. § 1983. As relevant here, the district court dismissed the Section 1983 claims brought by the representative of Young's mother's estate for lack of standing and dismissed all claims brought under the Texas Constitution against all defendants before granting summary judgment to all defendants on the remaining claims.

The representative of Young's mother's estate appeals the Section 1983 dismissal for lack of standing and the remaining plaintiffs appeal the summary judgment to Lau and the County. Because plaintiffs point to no reversible error, we AFFIRM.

I

Young was booked into the Jail on February 7, 2017, as a pretrial detainee. A nurse at the Jail noted that Young reported a history of depression and anxiety but denied experiencing suicidal ideation. Young stated that he was experiencing Xanax withdrawal and was started on a Librium taper for benzodiazepine abuse and withdrawal symptoms. He was

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

referred to a psychiatry consult but a February 10 assessment by the Jail determined he did not need one.

On February 12 at 12:20 AM, Young asked to speak with a detention officer. The officer described Young as "appear[ing] to be depressed" and said that another detainee reported that "Young was suicidal." The detention officer called the County's Crisis Intervention Response Team and "advised them of Inmate Young's nervous and concerned behavior." When they attempted to enter the cell at 7:15 AM, Young "closed his eyes and pretended to snore." He continued to do so despite being shaken, and was told "that if [he] would not speak with [them], [they] would conclude [the] interview and turn in his Referral." The sergeant for the floor was then notified.

Later that morning, Young was found unresponsive due to high blood pressure and was brought to an outside hospital, where he remained for almost twelve hours. He was diagnosed with unspecified leukocytosis and hypertension. He returned from the hospital and was admitted into the Jail's infirmary. There, Lau examined Young and found that he was likely experiencing withdrawal, ordered high blood pressure medication, and continued Young on the benzodiazepine withdrawal protocol. Lau increased the benzodiazepine withdrawal protocol treatment and admitted him into an infirmary cell, where Young remained through his February 13 death. Abraham Romero was the detention officer assigned to make rounds in that part of the jail. He averred that he did not receive "any type of 'pass-on' from the previous shift" regarding Young, and so "[a]t no time did [he] believe that [Young] was suicidal because if he was he would have been" "wearing a suicide smock." Romero did not check on Young between approximately 5:50 PM and 7:10 PM, when Young was found unresponsive, having hanged himself with bed linens. Romero was fired for falsifying logs

to make it appear as though he had been conducting rounds and referred for criminal prosecution.

## II

We review de novo the dismissal of Melanie Young's Section 1983 claim as representative of the estate of Vincent Young's mother, Gwenetta Young. *See Meador v. Apple, Inc.*, 911 F.3d 260, 264 (5th Cir. 2018). Gwenetta Young survived her son but died before this lawsuit was filed. The second amended complaint listed Melanie Young as a plaintiff solely in her capacity as representative of Gwenetta Young's estate. That complaint stated that "Ms. Gwenetta Young's wrongful death claims are brought by her estate representative, Plaintiff Melanie Young," then elaborated in a footnote that "Texas does not allow claims of a descendant for wrongful death to survive his/her death [so] [p]laintiff's claims are brought solely under 42 U.S.C. § 1983 federal claims for loss of inheritance damages." "Section 1983 recovery is limited to the party injured, the citizen whose federal rights have been invaded," but 42 U.S.C. § 1988 permits "look[ing] to state survival and wrongful death statutes in section 1983 actions because in a very real sense this does not do more than create an effective remedy and merely assures that there will be a remedy." *Rodgers v. Lancaster Police & Fire Dep't*, 819 F.3d 205, 209 n.9 (5th Cir. 2016) (internal quotation marks and citations omitted).

The district court ruled orally that "all plaintiffs, except Melanie Young, have standing to bring Section 1983 claims for damages under the Texas Wrongful Death Statute." It explained that this was because Texas' "wrongful death statute . . . allows an action for actual damages arising from an injury that causes an individual's death," but "[s]uch actions are, under the statute itself, the *exclusive* benefit of the [surviving] spouse, children, and parents of the deceased." It continued that Melanie Young, as "the

representative of the estate of [Vincent] Young's deceased mother," could not bring such a claim because "claims of wrongful death do[] not survive the beneficiary's death." Melanie Young's attorney responded, "I believe that the Court is correct . . . that [in] the current state that th[e] claim would not survive the death of the mother as a wrongful death claim." By subsequent order, the district court restated that "Melanie Young, as the representative of the estate of Young's deceased mother . . . lacks standing because a wrongful death claim does not survive the beneficiary's death. *See Webb v. Livingston*, 2017 WL 2118969, at *5-6 (S.D. Tex. May 16, 2017) (applying Texas law)."

Plaintiffs then filed the operative complaint. While the complaint noted that the district court had already dismissed Melanie Young's claims as representative of Gwenetta Young's estate, the complaint repeated them to "preserve [the] allegations." Melanie Young conceded in district court that she did not have standing, as Gwenetta Young's estate representative, to bring her claims under Texas' wrongful death statute. Furthermore, when she filed the operative complaint after those claims were dismissed, she did not replead those claims to argue standing under a different statute, nor does she offer an alternative now. The district court did not err in dismissing her claims.

## III

The summary judgment to Lau and the County is reviewed de novo. *See Nickell v. Beau View of Biloxi, LLC*, 636 F.3d 752, 754 (5th Cir. 2011). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence," which "shift[s] to the non-movant the burden of demonstrating

by competent summary judgment proof that there is an issue of material fact warranting trial." *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994). "The nonmovant cannot satisfy this burden merely by denying the allegations in the opponent's pleadings but can do so by tendering depositions, affidavits, and other competent evidence to buttress its claim." *Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

"[P]retrial detainees . . . are not protected by the Eighth Amendment," but this court has "held that 'the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement.'" *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) (en banc)). "To succeed in a § 1983 action based on 'episodic acts or omissions' in violation of Fourteenth Amendment rights, a pretrial detainee must show subjective deliberate indifference by the defendants." *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017) (quoting *Hare*, 74 F.3d at 643).

A

Plaintiffs fail to show that Lau violated Young's constitutional rights. We therefore do not consider whether Lau would have been eligible to assert qualified immunity or entitled to it. We also pretermit Lau's non-jurisdictional, statute of limitations defense. *See Bradley v. Sheriff's Dep't St. Landry Par.*, 958 F.3d 387, 390 (5th Cir. 2020).

An official acts with "deliberate indifference" when he is (1) "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and (2) "also draw[s] that inference." *Hyatt*, 843 F.3d at 177 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). While consistently emphasizing the high burden plaintiffs face on this second

element, caselaw establishes that it can "be proved many ways, including from circumstantial evidence." *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995).

Plaintiffs allege that Lau was deliberately indifferent to Young's risk from suicide because Lau was aware that suicidal thoughts were a side effect of Xanax withdrawal, had reviewed Young's medical records, noted that Young was experiencing withdrawal symptoms, and failed to enter special orders for Young's care resulting in Young being returned to an infirmary cell after his blood pressure stabilized. This court has emphasized that "that the constitutional standard of conduct must step up from negligence—that it must be more than mere or even gross negligence" because "the Due Process Clause was meant to prevent 'abusive government conduct.'" *Hare*, 74 F.3d at 645-46 (quoting *Davidson v. Cannon*, 474 U.S. 344, 348 (1986)). Even if these facts were sufficient to satisfy the first part of the test for deliberate indifference—awareness of facts from which one could infer a substantial risk of serious harm, *Hyatt*, 843 F.3d at 177—plaintiffs make no argument as to why the second part of the test, that the inference actually be drawn, *id.*, was met here. And to the extent that plaintiffs also attempt to argue a medical malpractice claim, the conclusory assertion that Lau's various treatment decisions "all . . . fell below the standard of care of a reasonably prudent physician" is insufficient to establish district court error.

B

Plaintiffs also fail to show error as to the summary judgment to the County on the Section 1983 claim against it. To establish liability for the County, plaintiffs were required to show "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir.

2002) (internal citation omitted).  On appeal, they offer two arguments as to the County.

First, plaintiffs contend that the County had a "no Xanax" policy—under which detainees who entered with Xanax prescriptions were denied Xanax and tapered with other benzodiazepines—that was deliberately indifferent to Young's serious medical needs.  Plaintiffs failed to create a genuine question of material fact on whether there was such a policy.  "The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010).  The County pointed to testimony from a staff physician, Dr. Sunder—who plaintiffs contend was the official policymaker— that there was no such blanket policy.  He testified that "[t]here is no such policy" and explained that he knew this to be the case because, "if a psychiatrist wants to prescribe Xanax for whatever reason," this is a "team of psychiatrists who will be able to prescribe" Xanax "if they want to," and "they will be able to just go ahead and do it."  The County explained that the "policy" to which plaintiffs referred was an "easy-to-understand detoxication flowchart" "made available to medical staff during orientation and posted in a common room."  It was created "because some medical providers confuse benzodiazepine taper procedures with opiate procedures" as "a person on benzodiazepine, like Young, was more likely to respond well to the Librium taper, which should be administered in the clinic," while "detainees with opiate addictions could receive Clonidine while housed in the general population."  Plaintiffs point to no evidence that Xanax was not prescribed to detainees, only to the fact that one staff physician had prescribed it just once.  Nor do they point to competent summary judgment evidence that Young had a prescription for Xanax.

Second, plaintiffs assert a general "unconstitutional lack of policies surrounding suicidal detainees" and a lack of "pass-on information," that is—communication from one official to another about a detainee's status and concerns surrounding that detainee.  They maintain that "[t]he lack of pass-on information demonstrates liability against the County [because] it shows that there was an unconstitutional lack of communication (a) among the shifts . . . and (b) between the jailers and medical staff," and "is illustrative of the County's unconstitutional lack of policies surrounding suicidal detainees."  Plaintiffs cite testimony of their medical expert that a "reasonably prudent physician, mental health professional, or nurse most certainly should have ordered a suicide smock and the patient be admitted into a specialized room because of his high risk for suicide because of his psychotic behavior."  Plaintiffs do not offer further argument on appeal. Without more, they fail to show that a fact question precluded summary judgment on whether there "was a constitutional violation whose 'moving force' is that policy (or custom)" to which they point. *Pineda*, 291 F.3d at 328 (internal citation omitted).

*        *        *

For the foregoing reasons, the judgment of the district court is AFFIRMED.