# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30673

United States Court of Appeals
Fifth Circuit

**FILED**
September 5, 2017

Lyle W. Cayce
Clerk

DAVID S. MAURER,

      Plaintiff

v.

INDEPENDENCE TOWN,

      Defendant

-----------------------------------------------------

DAVID S. MAURER,

      Plaintiff - Appellant

v.

NICHOLAS J. MUSCARELLO, SR.; CARLO S. BRUNO; DENNIS
CROCKER; TANGIPAHOA PARISH RURAL FIRE PROTECTION
DISTRICT NO. 2,

      Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

No. 16-30673

Before DAVIS, GRAVES, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

David S. Maurer served a contentious seven months as fire chief in Independence, Louisiana, before he was fired. He contends he was entitled to notice and an opportunity to respond before that termination. Whether the Due Process Clause affords him that right turns on whether he had a property interest in his employment. And that depends on whether he was a civil service employee under Louisiana law. He may have been a civil service employee, so we reverse the district court's grant of summary judgment and remand for further proceedings.

## I.

Independence closed its town fire department at the end of 2012. The Tangipahoa Parish Rural Fire Protection District Number 2 (the District), a political subdivision of the parish, took over fire protection services for the town and surrounding areas. The District divided its jurisdiction into service areas and contracted with ten volunteer fire departments to provide fire protection services in defined areas. For Independence, that department was the Independence Volunteer Fire Department (the Volunteer Department).

An unexecuted contract in the record sets out the relationship between the District and the ten volunteer departments, including the Independence Volunteer Department. The contract provides that the District will collect and allocate tax dollars to the departments, and, in return, the departments will "respond to any and all calls in their respective areas of responsibility." The departments also agree that "[a]ll additions or other changes to personnel shall be ratified in accordance with the annual budget adopted by the Board of Commissioners of the District" and that purchases of property or equipment, or modifications to existing property, with a cost of more than $10,000 must be preapproved by the District. Although the departments "administer their own

2

payroll," payroll expenses are reimbursed by the District. Such expenses will "not be reimbursed for any position that has not been ratified by the Board of Commissioners of the District." When a department wants to hire a job applicant, that decision "must be ratified by the District." The applicant must undergo a background check and drug and alcohol testing, and written evidence that the applicant was advised of these requirements must be sent to the District.

The contract also mandates that volunteer department members comply with District policies and states that, if they do not, the District has the authority to require the volunteer department to fire the member:

> If an individual Fire Department does not take timely action against its members and/or volunteers who have violated the [District's] adopted policies and procedures, the violation(s) shall be immediately reported to the Administrator [of the District] and forwarded to the Board of Commissioners of the District. After an investigation has been completed, the District board will render a final decision, *which shall be binding upon all Fire Departments . . . .*

The policies adopted by the District include recommended duties and a mandatory code of conduct, drug and alcohol abuse policy, social media policy, code of ethics, sexual and other harassment policy, and procedures for dealing with complaints against a volunteer department or department employee. According to the policies, the District has the authority to investigate any complaint, determine whether it is supported by sufficient evidence, and take "the appropriate action" under the District's disciplinary policy.

In accordance with the new arrangement, Independence terminated its firefighters at the end of 2012, and the Volunteer Department hired them. Around this time, Maurer, who previously worked for Independence's fire department, became fire chief of the Volunteer Department. There is some dispute about how he was hired. But taking the facts in the light most

favorable to Maurer, Defendant Dennis Crocker, the previous fire chief for Independence and incoming administrator for the District, selected him, and both the District's Board of Commissioners and the Board of Directors of the Volunteer Fire Department reviewed and approved the hire. The record includes an "Approval to Hire" form for Maurer's position titled "Tangipahoa Parish Rural Fire #2 Position Requisition/Approval to Hire Form."

During the seven months Maurer was fire chief, his paychecks came from the Volunteer Department, although the District allocated the funds. He set schedules for the Department's firefighters and managed the Department's day-to-day activities. He also had control over funds that came from donations. But he testified that "anything [he] needed, as far as buying something, hiring somebody, salary approvals, all went through" the District. He confirmed that, in accordance with the contract, if he sought to hire a firefighter, he would "seek approval from Fire District 2," and if it was denied, he could not hire the employee. District board meeting minutes confirm that he sought and received approval for hires. In terms of Maurer's own pay, he claims that he expected his salary to increase after six months on the job, but the District refused to increase the funds allocated for it. A fire chief for another department contracting with the District submitted an affidavit saying that the District similarly set his salary and told him it controlled hiring for his department.

During his tenure Maurer had numerous disagreements with Crocker. For example, Crocker recommended that Maurer fire a firefighter, but Maurer did not do so. Maurer changed the way medical calls were handled in a way that displeased Crocker. Maurer also sent firefighters for training in a different program than the one Crocker preferred. They also disagreed about whether Maurer should hire Crocker's son, despite an opinion from the Louisiana Board of Ethics that doing so would be improper. Maurer also described an instance when Crocker publicly criticized him for failing to get

fire marshal approval for a fireworks show. At his deposition, Maurer said he suffered no negative repercussions for disregarding Crocker's input because Crocker was not his boss.

But after seven months, following an investigation by Crocker, the Board of the Volunteer Department voted to terminate Maurer's employment. The record is vague about the details of the process for removing Maurer, but there is some evidence indicating that the District was involved. The Independence town clerk stated that shortly before Maurer's removal, at Crocker's behest and with input from a member of the District's Board of Commissioners, she wrote a letter to the District listing complaints about Maurer's behavior and threatening to withhold payments to the District in the amount of Maurer's salary if Maurer was not removed.

Maurer filed suit raising a procedural due process claim under section 1983 against the District, Crocker, and two members of the District's Board of Commissioners. Defendants moved for summary judgment on the ground that Maurer had no property interest in his employment and thus no constitutional protections. The district court agreed.

## II.

In ruling on the motion for summary judgment, the district court refused to consider the contract between the District and the ten volunteer departments that has all those details about the entities' relationship detailed above. It thought the contract was inadmissible because it was unexecuted, unauthenticated, and did not include a separate agreement—a cooperative agreement between the District and the Volunteer Department—it purported to attach.

We review a district court's evidentiary rulings when it determines the summary judgment record under an abuse of discretion standard. *See Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 667 (5th Cir. 1999). Although that

standard is deferential, an "erroneous view of the law" meets it. *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013) (quoting *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)).

That is what happened here. At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form. *See* FED. R. CIV. P. 56(c); *Lee v. Offshore Logistical & Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016). After a 2010 revision to Rule 56, "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *LSR Consulting, LLC*, 835 F.3d at 534 (quoting FED. R. CIV. P. 56(c)(2)).[1] This flexibility allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing on parties the time and expense it takes to authenticate everything in the record. *See* FED. R. CIV. P. 56(c)(1)(A).

There is nothing to compel a conclusion that the contract—one of the more common types of exhibits admitted in civil cases—is not capable of being admitted at an eventual trial. It is undisputed that the District and Volunteer Department entered into an agreement. The contract Maurer submitted appears to be that agreement, and Defendants have not argued otherwise. The absence of a signature does not make the contract inadmissible for the purpose

---

[1] As *Lee* and *LSR Consulting* show, confusion about the 2010 change to Rule 56 remains common. That confusion reaches our court. The district court relied on an unpublished 2015 case from this court which, citing a 2000 case, stated that courts "may consider only admissible evidence in ruling on a motion for summary judgment." *Maurer v. Town of Indep.*, 148 F. Supp. 3d 555, 556 (E.D. La. 2015) (quoting *Arlington Apartment Inv'rs, LLC v. Allied World Assur. Co.*, 612 F. App'x 237, 238 (5th Cir. 2015) (citing *Mersch v. City of Dallas,* 207 F.3d 732, 734–35 (5th Cir. 2000))).

Maurer is using it: to show the division of authority between the parties. *See* FED. R. EVID. 901; *see also, e.g., Tyco Thermal Controls, LLC v. Redwood Industrials, LLC*, 2012 WL 2792435, at *3 (N.D. Cal. July 9, 2012) (refusing to exclude unsigned contract when a witness statement said contract had been executed); *Knit With v. Knitting Fever, Inc.*, 742 F. Supp. 2d 568, 587 (E.D. Pa. 2010) (refusing to exclude unsigned agreement when the plaintiff presented "significant evidence that the executed . . . [a]greement did, at one point, exist"). That the contract does not attach a separate additional agreement it refers to between the District and the Volunteer Department would not seem to bar its ultimate use at trial (and if the additional agreement provided evidence to support the District, it could have submitted that document).

Even if the some of the concerns the court raised did create substantial doubt about the admissibility of the contract, it was the obligation of the opposing party to object. FED. R. CIV. P. 56(c)(2); *see also Donaghey v. Ocean Drilling & Expl. Co.*, 974 F.2d 646, 650 (5th Cir. 1992) (noting that in the absence of a timely objection or motion to strike, defects in summary judgment evidence ordinarily are waived). Such an objection gives the proffering party a chance "to explain the admissible form that is anticipated." FED. R. CIV. P. 56 advisory committee's note to 2010 amendment. So if the District had objected to the contract's admissibility, Maurer could have tried and remedied any defects by, for example, filing a declaration authenticating the contract or locating a signed copy. As there was no objection, Maurer was not on notice that he needed to formalize his submission.

Because the district court's exclusion of the contract was not consistent with the new summary judgment rule, its ruling was an abuse of discretion. We will thus consider the contract in determining whether the District was entitled to summary judgment on the civil service question. *See Curtis*, 174 F.3d at 667 (explaining that the remedy for an erroneous evidentiary ruling at

No. 16-30673

summary judgment is to review the district court's grant with the excluded evidence as part of the record); *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 233 (5th Cir. 2016) (noting that erroneous evidentiary rulings are subject to harmless error ruling, but correcting those errors when they affected whether summary judgment should have been granted).

### III.

The Fourteenth Amendment guarantees "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. The process due varies by the strength of the interests involved, but only actions that infringe enumerated interests—life, liberty, and property—require due process. *See Texas Faculty Ass'n v. Univ. of Texas at Dallas*, 946 F.2d 379, 383–84 (5th Cir. 1991). Maurer's entitlement to process thus depends on whether he had a property interest in continued employment. Property interests "are not created by the Constitution" but "are created and their dimensions are defined" by an independent source such as contract or state law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Depending on the relevant contract or state law a person may have a property interest in continued employment. *See id.*; *Texas Faculty Ass'n*, 946 F.2d at 379. For example, a tenured public university professor has such an interest. *See Jones v. Louisiana Bd. of Sup'rs of Univ. of Louisiana Sys.*, 809 F.3d 231, 236 (5th Cir. 2015). Under Louisiana law, so do civil service employees. *AFSCME, Council # 17 v. State ex rel. Dep't of Health & Hosps.*, 789 So. 2d 1263, 1267–68 (La. 2001); *Vanderwall v. Peck*, 129 F. App'x 89, 91 (5th Cir. 2005).

The summary judgment ruling turns on whether Maurer was in a civil service position, or at least whether he raises a factual dispute about that question. All fire protection districts operating a "regularly paid fire department" must establish a classified civil service system. LA. CONST. art.

No. 16-30673

10 § 16; *see also* LA. R.S. § 33:2535 (creating in each "fire protection district, a classified civil service embracing the positions of employment, the officers, and employees of . . . fire protection districts"). A fire chief is a civil service position if "the right of employee selection, appointment, supervision, and discharge" is vested in the fire protection district or in an officer or employee of the district. LA. R.S. § 33:2541(A). [2]

In concluding as a matter of law that Maurer's position was not a civil service position, the district court properly considered Louisiana Revised Statute section 33:2541, but it also followed Defendants' suggestion to give weight to a different test. It examined whether Maurer was an employee of the District under Louisiana's general test for determining the existence of an employer-employee relationship. *Maurer*, 148 F. Supp. 3d at 561–62 (citing *Harrington v. Hebert*, 789 So. 2d 649, 653 (La. App. 3 Cir. 2001)). But the statute defining civil service status refers to "positions," not employees, for

---

[2] An initial question is whether the District was operating a regularly paid fire department. Defendants did not move for summary judgment on this ground, so we assume the District was operating such a department. Indeed, courts agree that a Louisiana fire district operates a regularly paid fire department if it employs even one employee in firefighting, so Crocker's job as Fire Administrator seems to satisfy that requirement. *See Ballard v. Livingston Parish Fire Prot. Dist. No. 5*, 91 So.3d 311, 314 (La. App. 1 Cir. 2012); *France v. E. Cent. Bossier Fire Prot. Dist. No. 1,* 4 So.3d 959 (La. App. 2 Cir. 2009). This question not disputed here—about whether a defendant was operating a "regularly paid fire department"—is often the focus of Louisiana cases determining whether a person in a fire services position was entitled to due process. *See, e.g.*, *Ballard*, 91 So. 3d at 414. In addressing that question, the cases have to consider whether a district employs regularly paid employees. *See, e.g.*, *id.*; *Marshall v. W. Baton Rouge Parish Fire Prot. Dist. No. 1*, 998 So.2d 85 (La. 2009); *Heintz v. City of Gretna*, 683 So.2d 926, 927–28 (La. App. 3 Cir. 1996). But those cases do not address the separate question that was the basis for the district court's ruling: whether, assuming the District was operating a regularly paid fire department, Maurer held a civil service position.

Also not dispositive is a case Maurer emphasizes, *Wilcox v. Terrytown Fifth Dist. Volunteer Fire Dept., Inc.*, 897 F.2d 765 (5th Cir. 1990). That case addressed whether a nonprofit corporation providing fire services under contract with a fire district was a "public agency" under the Fair Labor Standards Act. *Id.* at 765–66. Whether an entity is a public agency is a different question from whether a particular position is part of the classified civil service.

which the District has the power of selection, appointment, supervision, and discharge. LA. R.S. § 33:2541. When a statute provides criteria directed to answering a specific question—in this case whether Maurer's position was a civil service one—that should control over general standards developed for different situations. *See* Antonin Scalia & Bryan A. Garner, READING LAW 183–88 (2012). Indeed, Defendants conceded at oral argument that Louisiana's general framework for determining whether an employer/employee relationship exists is not controlling.

To be sure, the test Louisiana courts apply to determine whether an employer/employee relationship exists looks to some of the same factors as the statutory test for deciding whether a position is a civil service position. But there are also differences. *Compare Harrington*, 789 So. 2d at 653 (looking to selection and engagement, payment of wages, power of dismissal, and power of control), *with* LA. R.S. § 33:2541 (focusing on the right to selection, appointment, supervision, and discharge). The general test focuses on payment of wages and power of control, as opposed to the right to supervise. The distinct *Harrington* framework led the district court to emphasize these different factors. *Maurer*, 148 F. Supp. 3d at 561–62.

The proper inquiry focuses narrowly on section 33:2541: whether the District had the right to select, appoint, supervise, and discharge the fire chief for the Independence Volunteer Fire Department. There are factual disputes on these material issues. Regarding selection and appointment, there is evidence that Crocker, as incoming Administrator for the District, selected Maurer as chief, and that the District's Board of Commissioners approved his hire. The contract itself specifies that any hire by a volunteer department— including a fire chief—must be ratified by the District.

There is also evidence the District had the authority to supervise Maurer. The contract says that Maurer was required to comply with the

No. 16-30673

District's detailed code of conduct and policies. If he did not, the District had the authority to punish him. The contract required that any complaint about any member of a volunteer department be forwarded to Crocker, who was authorized to conduct an investigation in compliance with the District's complaint resolution procedure and take appropriate disciplinary action. The contract also shows Maurer was required to seek District approval before making large purchases or hiring employees. Defendants emphasize the District did not exercise its authority by refusing to approve any hire Maurer wanted to make. But even if the District did not exercise the right in negative, that does not mean it lacked the authority to do so. Having a right and exercising it are two different things. Similarly, whether the District supervised hiring only for budgetary reasons, as Defendants assert, is beside the point. Section 33:2541 considers only the right to supervise, not the reason that power exists.

Finally, there is evidence that Crocker and the District had the right to discharge Maurer. Some evidence indicates they exercised that right and were involved in the decision to discharge him. But again, regardless of any actual involvement, it is enough that the contract gives the District the *right* to make a binding decision that Maurer be terminated. LA. R.S. § 33:2541.

With the contract considered as part of the summary judgment record, the evidence is thus sufficient to preclude summary judgment on the question whether Maurer was a member of the Louisiana civil service and entitled to due process before losing his job.[3] The parties do not address, so we do not decide, whether the civil service question is ultimately one for a judge or jury

---

[3] Maurer claims his property interest also derives from the contract between the District and the Volunteer Department and from Louisiana's Firefighter Bill of Rights. LA. R.S. § 33:2181. As we conclude summary judgment is inappropriate because of factual issues regarding whether Maurer was employed in a civil service position, we do not address whether those sources create a property interest protected by the Due Process Clause.

11

No. 16-30673

to decide.  At a minimum, however, there are disputed issues concerning the District's authority to select, appoint, supervise, and discharge the fire chief that a factfinder needs to answer.

**\* \* \***

We therefore REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.