# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 23, 2023

Lyle W. Cayce
Clerk

———————————

No. 20-30507

———————————

AMBER SCOTT, *Individually and on behalf of her minor children*, M.M., R.R., *and* A.G.R.,

*Plaintiff—Appellant*,

*versus*

CITY OF MANDEVILLE; DONALD J. VILLERE, *Individually and in his capacity as Mayor, City of Mandeville*; MANDEVILLE POLICE DEPARTMENT; GERALD STICKER, *Chief, Individually and in his capacity as Chief of the Mandeville Police Department*; TERRY GUILLORY, *Individually and in his capacity as an Officer of the Mandeville Police Department*; GREATER NEW ORLEANS EXPRESSWAY COMMISSION; CAUSEWAY POLICE DEPARTMENT; NICK CONGEMI, *Individually and in his capacity as Chief of the Causeway Police Department*; SCOTT HUFF, *Individually and in his capacity as an Officer of the Causeway Police Department*,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-8175

———————————————————————

Before RICHMAN, *Chief Judge*, and SMITH and GRAVES, *Circuit Judges*.

No. 20-30507

Priscilla Richman, *Chief Judge*:

Amber Scott was arrested for driving while intoxicated. She sued under 42 U.S.C. § 1983 and related state laws. The district court granted summary judgment to the defendants, dismissing all of Scott's claims. On appeal, Scott contests the summary judgment for the § 1983 claims of false arrest and excessive force along with the state law claims of false arrest, excessive force, negligence, and vicarious liability. Finding her appeal without merit, we affirm on all counts.

**I**

On September 18, 2017, a 911 caller reported to the Mandeville Police Department that a "really intoxicated driver" was "all over the road." The caller expressed concern that the driver would cause a severe accident and described the situation as "very stressful." Shortly thereafter, an officer of the Mandeville Police Department observed the reported vehicle crossing the fog lines on the side of the road and striking a curb. The officer pulled over the vehicle, which was driven by Amber Scott. Scott's minor children were also in the vehicle.[1] The following events were captured on video and audio recordings.

After being pulled over, Scott told the officer that she had recently been in an accident, which caused her car to pull to the right. Scott stated that she had not consumed any alcohol and was not on any medication. A second officer to arrive, Officer Guillory of the Mandeville Police Department, conducted a series of field sobriety tests on Scott. As a result of the tests, Officer Guillory concluded that she was not under the influence of alcohol. The first officer to the scene informed Officer Guillory that he

---

[1] The number of children present is disputed in the record; Scott's appellate brief states there were two in the car.

2

had observed Scott strike the curb with her vehicle. Officer Guillory then contacted Officer Huff of the Causeway Police Department, a drug recognition expert, and requested that he perform additional testing on Scott.

Before Officer Huff's arrival, Scott informed two officers that she had recently undergone shoulder and neck surgery and that she was still in a lot of pain from the injury. At one point, the recordings show Officer Guillory informing the 911 caller that he had "done field sobriety on her" and "if she's impaired, it's not alcohol." The caller (and his companion) then stated that "she was everywhere," "it was . . . scary," and inquired if the driver was even "alert" because "it was like she was falling asleep."

Officer Huff then arrived at the scene. The parties dispute whether Huff performed drug recognition tests, but the audio recordings show that Officer Huff discussed results with Officer Guillory and stated that she had a lack of convergence and a "fast clock." The conversation evinces that the officers concluded Scott was likely impaired, although not from alcohol.

The officers proceeded to arrest Scott. Officer Guillory moved Scott's arms behind her back, at which point Scott began to pull away from the officers. Officer Guillory ordered Scott to "stop turning" four times. Scott exclaimed "stop moving my arm like that . . . I had surgery and it's f_____ up." Scott then begged the officers "please don't touch my arm." After the officers continued to handcuff her, Scott repeatedly shouted, "oh my god," sounding distressed and in pain. The video shows Officer Guillory and Officer Huff twisting Scott's right arm behind her back, lifting the twisted arm, and bending Scott over on her vehicle in order to place handcuffs on her.

The officer report states that Scott was arrested for improper lane usage in violation of La. R.S. § 32:79 and for driving while intoxicated with

child endangerment in violation of La. R.S. § 14:98(B).[2] After the arrest, Scott admitted to taking both Xanax and Hydrocodone earlier that day.

Scott sued the Causeway Police Department, Chief Nick Congemi of the Causeway Police Department, the Greater New Orleans Expressway Commission, and Officer Scott Huff (collectively, "Causeway Defendants"), as well as the City of Mandeville, the Mandeville Police Department, Mayor Donald J. Villere of Mandeville, Chief Gerald Sticker of the Mandeville Police Department, and Officer Terry Guillory (collectively, "Mandeville Defendants"), alleging, *inter alia*, claims of false arrest and excessive force in violation of the Fourth Amendment, as well as state law claims for negligence, assault, battery, excessive force, false arrest, and intentional infliction of emotional distress.

Both groups of defendants moved for summary judgment. The district court first granted summary judgment in favor of the Causeway Defendants. Almost a year later, the district court granted summary judgment in favor of the Mandeville Defendants. The district court also entered a final judgment dismissing all of Scott's claims with prejudice. Scott timely appealed both summary judgments.

## II

We first address Scott's § 1983 claims of false arrest and excessive force. "This court reviews a district court's grant of summary judgment de novo, applying the same legal standards as the district court."[3] Summary

---

[2] *See* La. Stat. Ann. § 32:79 ("A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."); La. Stat. Ann. § 14:98(B).

[3] *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005) (citation omitted).

judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[4]  A dispute over a fact is "material" if it "might affect the outcome of the suit under the governing law."[5]  "In reviewing an appeal from summary judgment, we 'view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'"[6]  "However, when there is video evidence available in the record, the court is not bound to adopt the non[-]moving party's version of the facts if it is contradicted by the record, but rather should 'view[ ] the facts in the light depicted by the videotape.'"[7]

Both Officer Guillory and Officer Huff raised a qualified immunity defense to Scott's § 1983 claims.  "'A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof,' shifting it to the plaintiff to show that the defense is not available."[8]  "The qualified immunity inquiry includes two parts.  In the first we ask whether the officer's alleged conduct has violated a federal right; in the second we ask whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her

---

[4] FED. R. CIV. P. 56(a).

[5] *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[6] *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (quoting *Deville v. Marcantel*, 567 F.3d 156, 163-64 (5th Cir. 2009) (per curiam)).

[7] *Harris v. Serpas*, 745 F.3d 767, 771 (5th Cir. 2014) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007) (alteration in original)).

[8] *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam) (quoting *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)).

No. 20-30507

conduct."[9]   "The two steps of the qualified immunity inquiry may be performed in any order."[10]

## A

Scott first appeals the summary judgment against her § 1983 false arrest claim.  A false arrest occurs, and an individual's Fourth Amendment rights are violated, when an officer conducts an arrest without probable cause.[11]  To prevail on her § 1983 false arrest claim, Scott must show that the officers did not have probable cause to arrest her.[12]

"Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'"[13]  The standard for analyzing probable cause is whether, under the totality of the circumstances, there is a "fair probability" that a crime occurred.[14]  "[T]he requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark."[15]  Viewing the facts in the light most favorable to Scott, we conclude

---

[9] *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc) (citing *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) (per curiam)).

[10] *Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

[11] *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right."); *see also Davidson v. City of Stafford*, 848 F.3d 384, 393-94 (5th Cir. 2017).

[12] *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004) (citing *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001)).

[13] *Id.* at 655-56 (quoting *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001)).

[14] *United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) (quoting *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985)).

[15] *Id.*

that a reasonable person could have concluded there was a fair probability that Scott had been driving while intoxicated, and thus, no false arrest occurred.

On appeal, Scott contends that the district court erred in granting summary judgment and points to a variety of allegedly conflicting evidence regarding, *inter alia,* what drug recognition tests she passed, whether the officers' testimony was credible, and whether her speech was slurred. But those facts are not material, because even viewing each of them in the light most favorable to Scott, we still conclude that the officers had probable cause to arrest Scott for driving while intoxicated.[16]

That is because Scott does not contest the following facts, which are confirmed by the video and audio evidence: (1) A witness reported to the police that Scott was driving in a dangerous manner;[17] (2) there is video footage of Scott's car swerving out of the lane and recorded audio of the officers noting the swerve; and (3) Officer Guillory and Officer Huff could not conclusively determine that she had not taken drugs. Those facts alone are sufficient to give rise to probable cause that Scott was driving while intoxicated.

Consequently, we affirm the summary judgment on Scott's § 1983 false arrest claim. Because we find there to have been probable cause to arrest

---

[16] *See Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016) (stating that a dispute over a fact is "material" if it "might affect the outcome of the suit under the governing law" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[17] Specifically, the caller stated that there was a "really intoxicated driver" who was "all over the road"; that the driver "almost took out two cars"; and that the driver "almost hit me and I think we saved her life and a couple other people's lives tonight."

No. 20-30507

Scott, there is no need to reach the second step of the qualified immunity analysis.[18]

**B**

Scott next alleges that Officer Huff and Officer Guillory used excessive force in violation of her Fourth Amendment rights when they arrested her.  To prevail on her excessive force claim, Scott must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable."[19]  "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'"[20]

We conclude that the officers' use of force was not clearly unreasonable.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[21]  Under *Graham v. Conner*, relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [s]he is actively resisting arrest or attempting to evade arrest by flight."[22]

---

[18] *Tucker v. City of Shreveport*, 998 F.3d 165, 172 (5th Cir. 2021).

[19] *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citing *Harper v. Harris Cnty.*, 21 F.3d 597, 600 (5th Cir. 1994) (per curiam)).

[20] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

[21] *Graham*, 490 U.S. at 396.

[22] *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

No. 20-30507

Here, Scott was being arrested for driving under the influence, which is a serious crime under *Graham*.[23]  Although there is no evidence that Scott posed an immediate threat to the safety of the officers or others, the officers' use of force was relatively minimal.  Handcuffing is a generally accepted technique to conduct an arrest.[24]  Additionally, "minor, incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest do not give rise to a constitutional claim for excessive force."[25]

Scott does not appear to dispute that, but for her preexisting condition, the handcuffing procedure used against her was a reasonable use of force.  Instead, citing *Johnson v. Hollins*, Scott contends that a standard police technique becomes excessive if "the surrounding circumstances . . . would put a reasonable officer on notice that [an arrestee] was particularly susceptible to injury from the standard maneuver."[26]

But this court's decision in *Windham v. Harris County*[27] shows that this is not such a case.  In *Windham*, the plaintiff alleged that a field sobriety test injured him by aggravating a preexisting condition in his neck.[28]  The plaintiff expressed doubts to the officer as to his ability to complete the field sobriety tests and told the officer that it "hurt[] to lift [his] head up this high"

---

[23] *Griggs v. Brewer*, 841 F.3d 308, 316 (5th Cir. 2016).

[24] *See Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009) ("[I]n nearly every situation where an arrest is authorized . . . handcuffing is appropriate." (citation omitted)).

[25] *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (citations omitted); *see also Templeton v. Jarmillo*, 28 F.4th 618, 622-23 (5th Cir. 2022).

[26] 716 F. App'x 248, 253 (5th Cir. 2017) (per curiam) (unpublished); *see also Fisher*, 584 F.3d at 895-96.

[27] 875 F.3d 229 (5th Cir. 2017).

[28] *Id.* at 232.

No. 20-30507

and that he did not have any head injuries, but that his "neck hurt[]."[29]  The court noted, "there is no doubt that, but for [the plaintiff's] neck condition, [the officer's] administration of the gaze nystagmus test would have been a perfectly reasonable exercise of police authority."[30]  This court concluded that "no reasonable jury could find that the officers should have been on notice that his neck condition was such that he would suffer injury if [the officer] administered the test."[31]

Officer Guillory was performing a routine handcuffing technique when Scott began to pull away from his grasp as he repeatedly instructed her to stop turning away from him.  The officers then increased their use of force by lifting Scott's twisted right arm and bending her over the police car.  This limited use of force was a response to Scott's perceived resistance and was not clearly unreasonable under the circumstances.

Like the officers in *Windham*, Officer Huff and Officer Guillory were not on notice that Scott would suffer injury from their handcuffing procedure.  Although Scott informed other officers on the scene that she had recently undergone surgery, it is far from obvious that the officers would be on notice that Scott would be injured if they handcuffed her because of that surgery.  Scott had kept her hands above her head for a significant amount of time prior to the arrest and had not shown any visible signs of injury before the arrest.  The officers' first notice that Scott might become injured by the standard handcuffing procedure came when they began to handcuff Scott, as she was turning away from Officer Guillory's attempt to restrain her.  The officer's limited use of force (in such a short time frame) to restrain Scott and

---

[29] *Id.* at 234.

[30] *Id.* at 242-43.

[31] *Id.* at 243.

place her in handcuffs as a response to Scott's perceived resistance does not amount to excessive force.[32]

Because we conclude that Scott's Fourth Amendment rights were not violated, we need not reach the second step of the qualified immunity analysis. We therefore affirm the summary judgment on the § 1983 excessive force claim.

## III

Finally, Scott argues that the district court erred by granting summary judgment to the defendants on her Louisiana state law claims for (1) excessive force (2) false arrest; (3) negligence; (4) and vicarious liability.

## A

First, an officer is liable for injuries that result from the use of "unreasonable or excessive force."[33] "The reasonableness test . . . is based upon the text of the Fourth Amendment to the United States Constitution, as well as La. Code Cr. P. art. 220."[34] "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case. A court must evaluate the officers' actions against those of ordinary, prudent, and

---

[32] *See also Graham v. Connor*, 490 U.S. 386, 396-97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

[33] *Kyle v. City of New Orleans*, 353 So. 2d 969, 972 (La. 1977).

[34] *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 323 (La. 1994) (emphasis removed) (citing La. Code Crim. Proc. Ann. art. 220 ("A person shall submit peaceably to a lawful arrest. The person making a lawful arrest may use reasonable force to effect the arrest and detention, and also to overcome any resistance or threatened resistance of the person being arrested or detained.")).

reasonable men placed in the same position as the officers and with the same knowledge as the officers."[35]

To determine whether an officer used excessive force, Louisiana courts consider the following factors: "(1) the known character of the arrestee; (2) the risks and dangers faced by the officers; (3) the nature of the offense involved; (4) the chance of the arrestee's escape if the particular means are not employed; (5) the existence of alternative methods of arrest; (6) the physical size, strength, and weaponry of the officers as compared to the arrestee; and (7) the exigency of the moment."[36] As we noted in *Deville v. Marcantel*, these factors are "sufficiently similar to the *Graham* factors that our decision on this claim mirrors our decision" on Scott's § 1983 excessive force claim.[37] Accordingly, we affirm the summary judgment on Scott's state-law excessive force claim.

**B**

Under Louisiana law, "[f]alse arrest and imprisonment occur when one arrests and restrains another against his will without a warrant or other statutory authority."[38] The police may conduct a warrantless arrest if there is "reasonable cause to believe that the person to be arrested has committed an offense."[39] "Reasonable cause exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable trustworthy information, are sufficient to justify an average man of caution in

---

[35] *Kyle*, 353 So. 2d at 973 (citations omitted).

[36] *Mathieu*, 646 So. 2d at 322-23 (citing *Kyle*, 353 So. 2d at 973) (analyzing a negligence claim); *Deville v. Marcantel*, 567 F.3d 156, 172-73 (5th Cir. 2009) (per curiam) (citing *Kyle*, 353 So. 2d at 973) (analyzing an excessive force claim).

[37] *Deville*, 567 F.3d at 173.

[38] *Kyle*, 353 So. 2d at 971.

[39] La. Code Crim. Proc. Ann. art. 213(A)(3).

No. 20-30507

the belief that a [crime] has been committed."[40]   "This requires that an officer have probable cause for the arrest."[41]   Again, our analysis mirrors that of the federal claim—the officers had probable cause to arrest Scott for driving while intoxicated, and accordingly, there was no false arrest.   We affirm the summary judgment on Scott's state law false arrest claim.

## C

Scott also alleges negligence.   "Under Louisiana law, a police officer making an arrest owes a duty to act reasonably under the totality of the circumstances."[42]   Her live complaint broadly states that "the actions of defendant officers constitute negligence in the treatment of the plaintiff including assault, battery, excessive force and/or unlawful arrest, and intentional infliction of emotional distress, among other acts of negligence."   The district court granted summary judgment for defendants, finding "no evidence to create an issue of fact on whether the officers acted reasonably under the circumstances."

Scott contends that this was improper.   But upon a review of the record, we agree with the district court that there is simply no basis for a

---

[40] *Kyle*, 353 So. 2d at 971 (citations omitted).

[41] *Deville*, 567 F.3d at 172 (citing *State v. Hathaway*, 411 So.2d 1074, 1078-79 (La. 1982)).

[42] *Arnold v. Williams*, 979 F.3d 262, 271 (5th Cir. 2020) (citing *Mathieu v. Imperial Toy Corp.*, 646 So. 2d 318, 322 (La. 1994)).

negligence claim on any of the grounds alleged.[43]  We therefore affirm the summary judgment.

## D

Finally, Scott claims that the municipal defendants are vicariously liable for the tortious conduct of the officers.  Because Scott's underlying state law claims were properly dismissed, there is no basis for her vicarious liability claim against the municipal defendants.  We affirm the summary judgment on this issue.

\*     \*     \*

For these reasons, we AFFIRM the summary judgment on Scott's § 1983 and state-law claims.

---

[43] To the extent the negligence claim is predicated on the claims of excessive force and false arrest, our analysis mirrors that for those claims.