# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2023

Lyle W. Cayce
Clerk

No. 22-40758

Barney Donalson, Jr.,

*Plaintiff—Appellant*,

*versus*

Erin McLeaish,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:22-CV-13

Before Higginbotham, Higginson, and Duncan, *Circuit Judges*.

Per Curiam:[*]

On January 14, 2020, Barney Joe Donalson, Jr. was arrested at the Van Zandt County Courthouse in Canton, Texas following his outburst in the Courthouse hallway. Two years later, Donalson sued Deputy Erin McLeaish, alleging that she violated his constitutional rights during the arrest.[1] The case

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] Donalson also named Steve Deville as a defendant, but he later dismissed claims against Deville.

was referred to a magistrate judge who recommended granting summary judgment in favor of Deputy McLeaish. The district court adopted the magistrate's report and agreed. Donalson appealed.

We find that Donalson failed to demonstrate a genuine dispute of material fact as to his § 1983 claims and that Deputy McLeaish is entitled to summary judgment as a matter of law. The district court's ruling is AFFIRMED.

## I.

## A.

Appellant Joe Donalson is a pastor at the New Beginnings Fellowship Church (NB), located in Houston, Texas. In 2017, NB purchased a property in Canton, Texas to use as an emergency shelter for hurricane victims or as a "multipurpose house of worship with a sanctuary and housing for homeless persons." However, NB quickly encountered problems with the Canton municipal government who quickly filed suit in the 294th Judicial District of Texas seeking to enjoin NB from occupying the premises without complying with the relevant health and safety codes. On January 14, 2020, the court granted the injunction and ordered that NB, and Donalson personally, vacate the premises.[2]

The same day the injunction was issued, Donalson went to the Van Zandt courthouse to try and stay the order. While Donalson spoke with the

---

[2] The court also ordered that all personal property be removed from the property, proscribed habituation on the property, prohibited NB and Donalson from performing work on the property until they acquired the requisite City permits, and mandated that a third-party inspection be performed once the party was vacated. The court authorized the City of Canton Police Department to monitor and enter the premises, ordered the City to disconnect water service to the property, and required prior written authorization before reconnecting water.

Court Coordinator, Deputy Erin McLeaish approached the pair and requested that Donalson lower his voice because court was in session. After Donalson explained that he sought an emergency stay and that he "was told . . . not [to] leave this courthouse until I have a ruling on it," McLeaish directed Donalson to sit in a chair several feet away.

Several minutes later, a second officer—Deputy Rule—approached Donalson while he sat down. Donalson explained to Rule that he sought an emergency stay, and McLeaish said the presiding judge on the case was not in the courthouse that day. In a slightly raised voice, Donalson disputed McLeaish's explanation and requested to speak with another judge. In response, Rule advised Donalson that he "better calm it down because I will take you out of here."

Then, Donalson picked up his cell phone from his lap, raised both hands, and began to hit himself in the head with his hands and phone. He yelled an expletive, began to writhe in his chair, and rocked himself back and forth which caused his head to connect with the wall behind him. McLeaish approached Donalson with her hands outstretched towards his arms but lowered, seemingly attempting to stop him from hitting himself. At this point, Donalson may have tried to bite McLeaish. Rule approached Donalson from his other side and similarly tried to hold down his arms.

Donalson continued to flail his arms and legs, resist the deputies, and eventually slid off his chair and threw himself to the ground.[3] McLeaish moved to the ground and tried to restrain Donalson by placing her right knee onto Donalson's back or side as she grabbed his left arm and brought it behind

---

[3] When Donalson launched himself forward, his momentum caused his chair to move and trip Deputy Rule. Rule fell onto Donalson's back and Donalson can be heard crying and saying "ow." Rule quickly composed herself and moved off Donalson's back. Footage shows that the fall caused Donalson to begin bleeding from his face.

his back. Two other officers joined the scuffle to assist Rule and McLeaish, and the four officers struggled to handcuff Donalson. During the struggle, McLeaish continued to straddle Donalson's legs to hold him down.

After approximately thirty seconds, McLeaish successfully handcuffed Donalson and called for an ambulance. McLeaish remained on top of Donalson while she put on rubber gloves, secured his handcuffs, and patted him down. Once another officer arrived to interview Donalson, McLeaish left the scene. Although Donalson was injured during the interaction, he refused medical treatment.

Donalson was taken to a local hospital for a mental evaluation. The hospital determined Donalson did not require medical treatment and released him into the custody of the sheriff's department, and he was transferred to jail. Over the next several months, Donalson claims that he experienced headaches, back pain, and abdominal pain from the incident. Medical records indicate Donalson was eventually diagnosed with headaches, "postconcussion syndrome," spinal nerve damage, and gastrointestinal hemorrhage.

**B.**

Two years later, Donalson sued Deputy McLeaish under 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights. Donalson claimed that McLeaish violated his Fourth Amendment rights when she unlawfully detained him by "limit[ing] his movement by ordering him down a hallway and to sit in a chair," and by using excessive force to "slam Donalson on the floor and [cause] serious injury by putting her knee in the small of his back twisting [sic]."

After the case was referred to a magistrate judge, McLeaish moved for summary judgment on the basis of qualified immunity and provided three exhibits in support of her motion. Exhibit A is the temporary restraining order

issued on January 14, 2020, enjoining NB, Donalson, and Covenant Community of New Beginnings Fellowship/Canton from occupying the aforementioned property in Canton, Texas. Exhibit B contains McLeaish's affidavit, an affidavit of probable cause and an order to detain Donalson, and also incorporates three videos provided to the court: (1) Exhibit B.3, labeled "Deputy McLeaish Body Camera Video (1 of 2)"; (2) Exhibit B.4, labeled "Deputy McLeaish Body Camera Video (2 of 2)"; and (3) Exhibit B.5, labeled "Van Zandt County Courthouse Video." Exhibit C is an affidavit by Waynette Barker, the District Court Administrator of Van Zandt County.

The magistrate judge recommended that the district court grant McLeaish's motion for summary judgment on both claims. As to Donalson's unlawful detention claim, the magistrate judge concluded McLeaish did not violate Donalson's constitutional rights by "limit[ing] his movement by ordering him down a hallway and to sit in a chair." Regarding the excessive force claim, the magistrate judge found that McLeaish's use of force was not excessive because Donalson presented an objective risk of harm to himself and the nearby officers by "weaponiz[ing] his cell phone" which justified using force to restrain him. Once Donalson was on the ground, the magistrate judge concluded that McLeaish used appropriate force considering Donalson's "initial struggle," the length of time McLeaish kept her knee on his back, and the time it took to handcuff Donalson and perform a pat down. Ultimately, the magistrate judge concluded that McLeaish acted as a reasonable officer under the circumstances and did not use excessive force.[4] The district court agreed and granted McLeaish's motion for summary

---

[4] The magistrate judge further found that Donalson failed to provide evidence that McLeaish violated a clearly established right because Donalson provided inapposite case law to support his claim.

judgment. Donalson filed a motion for reconsideration, which the district court denied.

On appeal, Donalson argues the district court erred by considering inadmissible and unreliable evidence and that the record does not support McLeaish's entitlement to summary judgment as a matter of law. We disagree.

## II.

The magistrate judge determined that the video evidence from McLeaish's body-worn camera and from a hallway camera inside the courthouse offered "uncontested facts" refuting Donalson's account of the event. Because "nothing in the record indicates that [McLeaish's] knee was placed on [Donalson's] back in an aggressive manner or that it was placed for a reason other than to ensure both [Donalson's] and the officers' safety while assisting with restraining [Donalson]," the magistrate concluded that Donalson failed to show a genuine dispute of material fact as to the reasonableness of McLeaish's use of force and recommended the district court grant McLeaish's motion. Without commenting on the footage, the district court adopted the recommendation.

Donalson now argues the district court erred by considering McLeaish's videos for three reasons. First, Donalson argues the footage is not competent summary judgment evidence because it was unauthenticated. Although McLeaish did not authenticate the videos before the magistrate judge, summary judgment evidence need not be in an admissible form so long as it is capable of being presented in an admissible form at trial.[5] This

---

[5] FED. R. CIV. P. 56(b)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) (citing 11 MOORE'S FEDERAL PRACTICE – CIVIL ¶ 56.91 (2017)); *Allen v. Hays*,

approach "allows the court to consider the evidence that would likely be admitted at trial—as summary judgment is trying to determine if the evidence admitted at trial would allow a jury to find in favor of the nonmovant—without imposing" the burdens of trial at an earlier procedural stage.[6] Because McLeaish could have authenticated the videos at trial by providing an affidavit of their authenticity, Donalson's argument has no merit.

Second, Donalson claims McLeaish destroyed or altered the videos and fraudulently "passed off" her exhibits as the "true and correct copy of the Van Zandt surveillance videos of the incident." In support of this assertion, Donalson claims McLeaish's body-worn camera footage was "altered into two separate files, with missing material content both before, in the middle, and after." He further argues that Exhibit B.5, the hallway recording, shows signs of "intentional concealment of material information" and objects that this recording was not the same as the "full 33-minute long video that was publicly released without audio."[7]

The Court disagrees. Fraud upon the court is a serious accusation, and Donalson has provided no evidence that the exhibits were improperly

---

812 F. App'x 185, 193 (5th Cir. 2020) ("The attached documents, moreover, were properly before the court on summary judgment, despite their not being authenticated, because admissible evidence may be submitted in an inadmissible form at the summary judgment stage.") (citation and internal quotations omitted); *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.") (citation omitted).

[6] *Maurer*, 870 F.3d at 384.

[7] Because McLeaish failed to provide the "full" video, Donalson also argues that she "failed to make a complete disclosure" pursuant to Federal Rule of Civil Procedure 26(a)(1). There is no evidence that McLeaish excluded Exhibit B.5 from her initial disclosures, and Donalson did not object to her disclosures in his Response to her motion for summary judgment.

modified; he offers mere "speculative allegations."[8] That McLeaish's body camera footage was divided into two recordings does not mean the recordings were inaccurate or their quality was compromised. Further, aside from the conclusory allegation that the footage is "missing material content," Donalson does not explain what the "material content" is or how it affects the case at hand. Moreover, the hallway footage captures the entirety of the encounter, from McLeaish's initial meeting with Donalson to when he is escorted out of the building. This footage renders any deficiencies in the body-worn camera recordings immaterial.

Finally, Donalson's critique of the hallway recording is likewise unpersuasive. Exhibit B.5 is a 33-minute recording from a hallway camera inside the courthouse. Because of its vantage point, the recording captured the whole encounter. However, Donalson claims that Exhibit B.5 is not the same recording as the "full" video released by the County and that the provided video indicated "intentional concealment of material information." Donalson provided a YouTube link to the "full" video, which he asserts shows the scene from a "different angle" and reflects McLeaish using her knee to restrain Donalson.

The Court has reviewed Donalson's referenced video and finds that it is the same recording McLeaish provided as Exhibit B.5. The recordings contain the same content, are recorded from the same vantage point, and both bear the indicator "Camera 05." Donalson's argument that McLeaish concealed material by not providing "full" video is baseless.[9]

---

[8] *See Skiba v. Jacobs Ent., Inc.*, 587 F. App'x 136, 139 (5th Cir. 2014).

[9] For the same reason, Donalson's accusations provide no basis to remand for another evidentiary hearing nor to supplement the appellate record.

**III.**

Donalson also contends that the record did not support the district court's grant of summary judgment because there is a genuine dispute as to whether McLeaish used excessive force. This Court reviews a district court's grant of summary judgment de novo and disagrees with Donalson.[10]

**A.**

42 U.S.C. § 1983 imposes liability for the "deprivation of any rights, privileges or immunities secured by the Constitution and laws" caused by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State."[11] To prevail on a § 1983 claim, the plaintiff must establish: (1) a violation of a right secured by the Constitution or laws of the United States, and (2) that was committed by a person acting under color of state law.[12] Donalson claims McLeaish violated his Fourth and Fourteenth Amendment rights to be free from unlawful detention and excessive use of force.

The Fourth Amendment protects against unreasonable searches and seizures.[13] A "seizure" occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'"[14] Seizures are unlawful if,

---

[10] *Aguirre v. City of San Antonio*, 995 F.3d 395, 405 (5th Cir. 2021).

[11] 42 U.S.C. § 1983.

[12] *Salazar-Limon v. City of Houston*, 826 F.3d 272, 277–78 (5th Cir. 2016), *as revised* (June 16, 2016).

[13] U.S. CONST., amend. IV.

[14] *Kaupp v. Texas*, 538 U.S. 626, 629 (2003) (citing *Florida v. Bostick*, 501 U.S. 429, 437 (1991)); *see also United States v. Mendenhall*, 446 U.S. 544 (1980).

depending on the circumstances, the officer lacked reasonable suspicion or probable cause to detain the individual.[15]

Any claim "that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard."[16] To establish a Fourth Amendment violation based on an officer's use of excessive force, the plaintiff must show: (1) an injury; (2) "which resulted from the use of force that was clearly excessive to the need;" (3) "the excessiveness of which was objectively unreasonable."[17]

At summary judgment, the movant must show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[18] The Court reviews all facts in the light most favorable to the nonmoving party.[19] However, when a public official asserts the qualified immunity defense, the burden shifts to the plaintiff to show that: (1) the official violated a statutory or constitutional right; and (2) the right was "clearly established" at the time of the challenged conduct.[20] Under this burden shifting regime, the public official asserting qualified immunity does

---

[15] *See generally Terry v. Ohio*, 392 U.S. 1 (1968) (justifying on-the-street stops based on reasonable suspicion that crime is afoot); *Allen v. Hays*, 65 F.4th 736, 746 (5th Cir. 2023) ("An arrest is unlawful if the officer did not have probable cause.").

[16] *Graham v. Connor*, 490 U.S. 386, 395 (1989).

[17] *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)).

[18] Fed. R. Civ. P. 56(a).

[19] *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

[20] *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001) (citing *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)).

not bear the initial burden of showing "an absence of genuine disputes of material fact and entitlement to judgment as a matter of law."[21]

This Court will review the evidence in light most favorable to Donalson and will draw all reasonable inferences in his favor, but Donalson still bears the burden of pointing to "specific evidence" in the record that demonstrates a genuine dispute of material fact as to a constitutional injury that was clearly established at the time of the alleged violation.[22] Moreover, "when there is video evidence in the record, courts are not bound to accept the nonmovant's version of the facts if it is contradicted by the video."[23] However, when video evidence is ambiguous or incomplete, "a court should not discount the nonmoving party's story unless the video evidence provides so much clarity that a reasonable jury could not believe his account."[24]

## B.

The district court granted McLeaish's motion for summary judgment on Donalson's unlawful seizure and excessive force claims. In his briefing before the Court, Donalson does not appeal the district court's dismissal of his unlawful seizure claim.[25] Thus, only the excessive force claim is before us.

---

[21] *Id.*

[22] *Orr v. Copeland,* 844 F.3d 484, 490 (5th Cir. 2016).

[23] *Crane v. City of Arlington, Tex.*, 50 F.4th 453, 461–62 (5th Cir. 2022), *cert. denied Arlington, TX v. Crane*, No. 22-1151, 2023 WL 7117014 (U.S. Oct. 30, 2023).

[24] *Darden v. City of Fort Worth*, 880 F.3d 722, 730 (5th Cir. 2018).

[25] Despite noting that "this case also presents the issue of whether Donalson was subjected to a false arrest when [O]fficer McLeaish directed him to sit by himself in a chair in the Van Zandt County Courthouse hallway," Donalson did not brief this issue. This Court will not address issues not raised in the initial appellate brief. *See Reagan Nat'l Advert. Of Austin, Inc. v. City of Austin*, 64 F.4th 287, 291 (5th Cir. 2023) ("Ordinarily, '[a]n appellant abandons all issues not raised and argued in its initial brief on appeal.'") (citing *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994)).

Donalson bears the burden of pointing to "specific evidence" of: (1) his injury; (2) "which resulted from the use of force that was clearly excessive to the need;" and (3) "the excessiveness of which was objectively unreasonable."[26] As evidence of his injury, Donalson directs this Court to his records, which reflect diagnoses ranging from headache and trauma to acute lower GI bleeding. He also points to the video evidence, which he describes as "portray[ing] a prone Donalson lying under McLeaish and several other officers lying in a pool of blood."

It is indisputable that Donalson was injured during the scuffle at the courthouse. As Donalson points out, his injuries are apparent from the videos that show pools of blood underneath Donalson's head and significant blood on his face. But as McLeaish notes, Donalson "caused injury to himself" when he hit himself in the head with his cell phone, "thrashed" around in his chair, and propelled himself onto the ground. The footage underscores McLeaish's account: Donalson hit himself in the head repeatedly and forcefully rocked back forward and backward in his chair, seemingly hitting his head against the wall. Furthermore, the footage shows that it was Donalson, not McLeaish or Rule, who pulled himself to the floor. When he hit the ground, Donalson injured his face, which is captured clearly by the hallway camera.

Next, Donalson contends that his more serious injuries, i.e., the spinal and intestinal injuries, occurred once he was on the ground when McLeaish "lifted one of her knees and struck Donalson in the back injuring his spine and small intestine." Donalson claims he was not resisting when McLeaish

---

[26] *Orr,* 844 F.3d at 490; *Ramirez,* 716 F.3d at 377 (quoting *Rockwell,* 664 F.3d at 991).

delivered her "knee strike assault," and that the video footage "removes any doubts" as to the force used.

Even accepting that Donalson sustained serious injuries, we cannot say that McLeaish used excessive force. "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'"[27] Whether an officer acted reasonably is a totality of the circumstances assessment, but relevant factors include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[28]

Although Donalson had committed no crime, we agree with the district court that he posed a threat to himself and others when he "weaponized" his phone.[29] Donalson posed a threat to his own safety as soon as he began hitting himself in the head with a hard object, thrashing his body in the chair, and hitting his head against the wall. Donalson did not merely "tap[] his forehead" with the phone; audio from McLeaish's body camera captured the sound of Donalson's phone hitting his head five times before

---

[27] *Scott v. City of Mandeville*, 69 F.4th 249, 256 (5th Cir. 2023) (citing *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam)).

[28] *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1986).

[29] We further note that given Donalson's behavior—including his physical movements and yells—the deputies could have reasonably believed he presented a substantial risk of harm to himself and, as such, were legally authorized to detain Donalson at that point. *See* TEX. HEALTH & SAFETY CODE § 573.001 (authorizing a peace officer, without a warrant, to take a person into custody if the officer has reason to believe and does believe "the person is a person with mental illness," "because of that mental illness there is a substantial risk of serious harm to the person or to others unless the person is immediately restrained," and "believes that there is not sufficient time to obtain a warrant before taking the person into custody").

McLeaish approached him. The same clip reflects Donalson moving his head backwards and connecting with the wall.

Furthermore, Donalson's actions threatened the deputies' safety. When McLeaish attempted to hold his arm down, Donalson appeared to have tried to bite her. He continued to wave his phone and arms violently, and in doing so, brought his fist close to Rule's head as she tried to restrain him. When he launched himself out of his chair, Donalson brought Rule down with him.[30] Because Donalson presented an objective risk of harm to himself and the deputies, McLeaish had cause to temporarily restrain him.[31]

The footage also indicates that McLeaish used minimal force when restraining Donalson. While Donalson was flailing in the chair, McLeaish approached him with her arms lowered; she limited her physical contact at first to his arms and wrists. Only when Donalson moved to the ground did McLeaish exert more force by using her right knee to hold Donalson down while she attempted to bring his left arm behind his back.[32] Once Donalson was handcuffed, McLeaish remained on Donalson's back for approximately one more minute while she put on rubber gloves, adjusted Donalson's handcuffs, and performed a pat down. Once McLeaish completed her frisk, she stood up, thus removing any weight from Donalson.

---

[30] Contrary to Donalson's assertion that "Deputy McLeaish and several other law enforcement officers pulled Donalson out of the chair onto the floor and piled on top of him," the video shows that neither Deputy McLeaish nor Deputy Rule pulled him towards the ground. To the contrary, Donalson pulled Rule down.

[31] *See* Tex. Health & Safety Code § 573.001.

[32] Although the audio records Donalson stating "I'm not resisting," the video shows Deputies Rule and McLeaish, as well as two other officers who came to support them, struggling to clasp the handcuffs.

In sum, less than three minutes passed between the moment when Donalson threw himself onto the ground and when Deputy McLeaish stopped exerting force. During this time, the body-worn camera and hallway recordings show that McLeaish placed her knee on Donalson's back for approximately two and a half minutes. Although minutes may feel longer in the moment, McLeaish did not exert any more force than was needed to secure Donalson's handcuffs, don rubber gloves, and perform a pat down.

Finally, although the footage shows McLeaish used her knee to restrain Donalson, it does not support Donalson's contention that she "twice lifted one of her knees and struck Donalson in the back injuring his spine and small intestine." In fact, the footage contradicts his claims. Thus, even viewing the facts in the light most favorable to Donalson, his allegations are refuted by the video evidence such that no reasonable jury could believe his account.

Donalson bore the burden of demonstrating McLeaish's use of force was "clearly excessive." He has not done so.

## IV.

Law enforcement officers must use no more force than is necessary to restrain individuals. The video evidence conclusively supports this Court's conclusions that Donalson presented a threat to himself and Deputies McLeaish and Rule, McLeaish exerted a reasonable amount of force to restrain Donalson, and she ceased doing so as soon as Donalson was secured. Under these circumstances, McLeaish is entitled to qualified immunity.

Accordingly, the district court's ruling is AFFIRMED.